UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JONATHAN V.,

                              Plaintiff,

v.                                                      6:18-CV-1350 (TWD)

COMM'R OF SOC. SEC.,

                              Defendant.

_____

APPEARANCES:                                   OF COUNSEL:

JONATHAN V.
  Plaintiff, *Pro Se*

U.S. SOCIAL SECURITY ADMIN.            DANIEL STICE TARABELLI, ESQ
OFFICE OF THE GEN. COUNSEL
  Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**DECISION AND ORDER**</u>

        Currently before the Court, in this Social Security action filed by Jonathan V.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion for judgment on the

pleadings and Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 14 and 18.)  For

the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and

Defendant's motion for judgment on the pleadings is denied.

## I.      RELEVANT BACKGROUND

### A.      Procedural History

        On September 4, 2015, Plaintiff applied for child's insurance benefits and Supplemental

Security Income alleging disability beginning August 1, 2009, due to back pain from herniated

discs, scoliosis and arthritis, bipolar disorder, depression, anger, attention deficit hyperactivity disorder, and effects of breaks in the left forearm (radius and ulna). (T. 106, 117, 125, 133-35, 139, 141, 216-29.[1])  Plaintiff was born in 1989 and reported completing the twelfth grade.  He has previous work as a material handler.  (T. 218, 220, 276.)

Plaintiff's applications[2] were initially denied on February 2, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  (T. 106-35, 158-71.)  He appeared at an administrative hearing before ALJ David S. Pang on November 15, 2017.  (T. 92-105.)  Plaintiff was represented by Kimberly MacDougall, a non-attorney representative.  *Id*.  On December 28, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 136-57.)  On September 13, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

### B.     The ALJ's Decision

The ALJ found Plaintiff had not attained the age of 22 as of August 1, 2009, the alleged onset date.  (T. 141.)  The ALJ noted Plaintiff had worked after the alleged disability onset date but the work did not rise to the level of substantial gainful activity.  (*Id*.)  He found Plaintiff's lumbar disc disorder with herniation and degenerative changes, status post ulnar fracture, bipolar disorder, and social anxiety disorder are severe impairments.  (T. 142.)  He determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals one

---

[1]  The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

[2]  As Defendant points out, Plaintiff based his original child's insurance benefits application on his mother's social security record and filed a child's insurance benefits application on his father's record the following month.  (Dkt. No. 18 at 2, n.4; T. 133, 135, 249.)

of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1.  (T. 142-43.)  The ALJ found

Plaintiff has the residual functional capacity ("RFC") to perform light work with additional

limitations.  (T. 144.)  Specifically, the ALJ found Plaintiff:

> is able to lift up to 20 pounds at a time, frequently lift or carry
> objects weighing up to 10 pounds, and stand, walk, and sit for
> approximately six hours each in an eight-hour workday.  [He] can
> push and pull the same amount as he can lift and carry.  [He] can
> occasionally climb ramps and stairs and he can never climb
> ladders, ropes or scaffolds.  He can occasionally stoop, kneel,
> crouch and crawl.  [He] can tolerate occasional exposure to
> concentrated dust, fumes and gases.  He is limited to performing
> simple, routine and repetitive tasks and he can have occasional
> interaction with supervisors, coworkers and the public.

(T. 144.)  The ALJ found Plaintiff has been unable to perform any past relevant work at all times

relevant to the decision.  (T. 150.)  The ALJ determined he can perform other jobs existing in

significant numbers in the national economy.  (T. 150-151.)  Therefore, the ALJ concluded

Plaintiff is not disabled.  (T. 151-52.)

### C.    The Parties' Briefings on Their Cross-Motions

Plaintiff, appearing *pro se*, argues the ALJ erred because he disregarded the opinions

from Plaintiff's treating physicians and gave more weight to the opinions of the consultative

examiners.  (Dkt. No. 14 at 4-5, 19, 39-40, 64-65.)  Plaintiff maintains he is disabled by his

physical and mental conditions.  (*Id*. at 5-14, 20-35, 41-63, 66-74.)  Defendant argues substantial

evidence supports the ALJ's assessment of Plaintiff's RFC and the Step Five determination.

(Dkt. No. 18 at 3-14.)  In so doing, Defendant maintains the ALJ properly considered the

opinions of treating providers Nathaniel Gould, M.D., and Steven Schaeffer, M.D., and

consultative examiners Brian Cole, M.D., and Cheryl Loomis, Ph.D.  (*Id*. at 5-13.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under that five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id*.

**III.    REMAND IS REQUIRED BECAUSE IT IS UNCLEAR WHETHER EVIDENCE WAS RECEIVED AND/OR CONSIDERED BY THE ALJ AND/OR THE APPEALS COUNCIL**

**A.    Applicable Law**

"Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 86 (2d Cir. 2015) (quoting 20 C.F.R. § 404.970(b)). "The Appeals Council is obligated to consider 'new and material evidence.'" *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (citing 20 C.F.R. § 404.970(b)). "New evidence is 'material' if it is: '(1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative.'" *Stratton*, 51 F. Supp. 3d at 218 (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)). "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" *Id.* (quoting *Pollard*, 377 F.3d at 193) (alteration in original).

In December 2016, the Social Security Administration ("SSA") adopted the requirement that a claimant must submit or inform SSA about written evidence at least five business days before the date of his or her scheduled hearing. 20 C.F.R. § 416.1435(a); Social Security Ruling ("SSR") 17-4p, 2017 WL 4736894, at *2 (SSA Oct. 4, 2017). "If a party fails to comply with this requirement to submit all written evidence at least five days before the hearing, 'the administrative law judge may decline to consider or obtain the evidence' unless" one of the exceptions in 20 C.F.R. § 416.1435(a)-(b) applies. *Shari Lee Z. v. Saul*, 19-CV-0265 (GTS), 19-CV-0268, 2019 WL 6840134, at *6 (N.D.N.Y. Dec. 16, 2019). The five-day rule was effective at the time of the ALJ's December 2017 decision here.

**B.**     Analysis

The certified administrative record contains office treatment records from Bassett Healthcare dated January 2012 to September 2014.  (T. 61-91.)  Based on the time stamps at the top of each page, it appears this evidence was obtained (and/or submitted) by Ms. MacDougall, Plaintiff's non-attorney representative at the administrative level, on November 27, 2017, prior to the ALJ's December 28, 2017, decision.  (T. 1-6, 308.)  A letter to ALJ Pang dated November 8, 2017, from Ms. MacDougall indicates she requested records from orthopedist Joseph Dutkowsky, M.D., on October 20, 2017 and received records on November 8, 2017, and also submitted them that day.  (T. 300-01.)  Ms. MacDougall's letter also indicates records were missing pertaining to a second surgery and continued treatment of Plaintiff's left ulnar fracture, which she noted limited his left hand function.  (T. 300.)  It appears the records Ms. MacDougall submitted on November 8, 2017, are at Exhibits 17F and 18F based on the time stamp on the top of each page.  (T. 511-20.)  The ALJ's December 2017 decision does not reflect consideration of any additional evidence regarding Plaintiff's forearm surgery and it does not appear any additional records from Dr. Dutkowsky were added to his exhibit list following the administrative hearing on November 15, 2017.  (T. 92-105, 136-57.)

At the hearing, Ms. MacDougall noted Plaintiff had surgery to remove the hardware in his forearm, but additional evidence or missing records were not discussed.  (T. 94-95.)  The ALJ's decision indicates Plaintiff submitted or informed him about all written evidence at least five business days before the date of Plaintiff's scheduled hearing.  (T. 139.)  Therefore, it appears the evidence at T. 61-91 may have been submitted to the ALJ following Plaintiff's November 15, 2017, hearing but was not otherwise discussed or exhibited.

Defendant cites to the additional evidence in his brief and notes that Plaintiff attached a large amount of evidence to his brief, arguing the evidence in Plaintiff's brief is not new because it is in the administrative record already.  (Dkt. No. 18 at 4, n.7, 6.)  That much is true, Plaintiff does include and cite to some pages from the evidence at T. 61-91 in his brief.  (Dkt. No. 14 at 6, 20-25, 74.)  However, the Court's review indicates these records were not considered by the ALJ and the ALJ did not address any violations of the five-day rule or applicable exceptions.  (T. 139.)  Because the evidence was not addressed or exhibited by either the ALJ or the Appeals Council, it remains unclear if this additional evidence was ever properly considered by the Agency.  (T. 1-6, 136-57.)  Ms. MacDougall also did not address this evidence in her June 12, 2018, letter brief to the Appeals Council.  (T. 1-6, 306-07.)

"It is the function of the Social Security Administration—not the federal district court—to 'weigh the conflicting evidence in the record' and resolve such conflicts." *Blisko v. Comm'r of Soc. Sec.*, 378 F. Supp. 3d 140, 144-45 (E.D.N.Y. May 7, 2019) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); citing *Cage v. Comm'r v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012)).  Here, it is not clear the additional evidence was ever weighed at all and that should not be undertaken by this Court in the first instance. Therefore, although the Court does not reach a finding on the materiality of this evidence, the Court finds remand is required here because such evidence directly contradicts portions of the ALJ's analysis.  (T. 145.)  For example, the ALJ stated in his decision that there was no evidence that removal of the hardware in Plaintiff's forearm took place after an appointment with Dr. Dutkowsky in September 2011.[3]  (T. 145.)  The additional evidence indicates that, in January 2012, Plaintiff was status-post removal of hardware of both the left radius and ulna performed by

---

[3] The ALJ's summary of the medical evidence indicates Plaintiff's last appointment in 2011 was in October.  (T. 145.)  However, the treatment note cited by the ALJ from Dr. Dutkowsky at Exhibit 17F is dated September 28, 2011.  (T. 516.)

Dr. Dutkowsky in November 2011; however, the evidence at T. 61-91 does not contain actual operative records from that procedure. (T. 61.) The ALJ also stated that after the September 2011 appointment with Dr. Dutkwosky, "[t]he next medical evidence is from over three years later." (T. 145.) The ALJ's analysis therefore implies there was a gap in Plaintiff's treatment between September 2011 and December 2014, whereas the additional evidence not exhibited or addressed by the ALJ or the Appeals Council indicates Plaintiff was seen by treatment providers in January, May, August, and September 2012, and then again in June 2014 with additional testing and scans of the lumbar spine performed in 2014. (T. 61-91, 145, 355-66, 516.)

To be sure, it is possible the Appeals Council could find this additional evidence is insufficient to trigger review of the ALJ's decision. However, it is unclear whether this evidence was ever received or properly considered by the Agency and this Court therefore is unable to determine whether the final decision of the Commissioner is supported by substantial evidence. Therefore, this mater is remanded so the Commissioner can clarify consideration of the evidence at T. 61-91. Because remand is required, and in light of the ALJ's indication that there was a gap in treatment between September 2011 and December 2014, the Court declines to reach findings on issues related to the ALJ's RFC and Step Five determinations. (T. 144-51.)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper explanation of the

consideration of the additional evidence and any other further proceedings, consistent with this Decision and Order; and it is further

ORDERED that the Clerk serve a copy of this Decision and Order on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76

(2d Cir. 2009) (per curiam).

Dated: March 17, 2020
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

SSR 17-4P (S.S.A.), 2017 WL 4736894

Social Security Administration

[Docket No. SSA-2017-0048]

SOCIAL SECURITY RULING, SSR 17-4P; TITLES II AND XVI:
RESPONSIBILITY FOR DEVELOPING WRITTEN EVIDENCE

SSR 17-4P
October 4, 2017

NOTICES

**\*1**  AGENCY: Social Security Administration.

ACTION: Notice of Social Security Ruling (SSR).

SUMMARY: We are providing notice of SSR 17-4p. This SSR clarifies our responsibilities and the responsibilities of a claimant and a claimant's representative to develop evidence and other information in disability and blindness claims.

FOR FURTHER INFORMATION CONTACT: Patrick McGuire, Office of Appellate Operations, Social Security Administration, 5107 Leesburg Pike, Falls Church, VA 22041, (703) 605-7100. For information on eligibility or filing for benefits, call our national toll-free number, 1-800-772-1213 or TTY 1-800-325-0778, or visit our Internet site, Social Security Online, at http://www.socialsecurity.gov.

SUPPLEMENTARY INFORMATION: Although 5 U.S.C. 552(a)(1) and (a)(2) do not require us to publish this SSR, we are doing so in accordance with 20 CFR 402.35(b)(1). Through SSRs, we make available to the public precedential decisions relating to the Federal old-age, survivors, disability, supplemental security income, and special veterans' benefits programs. We may base SSRs on determinations or decisions made at all levels of administrative adjudication, Federal court decisions, Commissioner's decisions, opinions of the Office of the General Counsel, or other interpretations of the law and regulations.

Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 CFR 402.35(b)(1).

This SSR will remain in effect until we publish a notice in the Federal Register that rescinds it, or until we publish a new SSR that replaces or modifies it.

(Catalog of Federal Domestic Assistance, Programs Nos. 96.001, Social Security—Disability Insurance; 96.002, Social Security—Retirement Insurance; 96.004, Social Security—Survivors Insurance; 96.006—Supplemental Security Income.)

Nancy A. Berryhill,

Acting Commissioner of Social Security.

**POLICY INTERPRETATION RULING**

**SSR 17-4p: Titles II and XVI: Responsibility for Developing Written Evidence**

**Purpose**

This Ruling clarifies our responsibilities and those of the claimant and the claimant's representative to develop evidence and other information in disability and blindness claims under titles II and XVI of the Social Security Act (Act). This Ruling applies at all levels of our administrative review process, as described below.

**Citations (Authority)**

Sections 206(a), 223(d), and 1614(a) of the Social Security Act, as amended; 20 CFR 404.935, 404.970, 404.1512, 404.1513, 404.1593, 404.1594, 404.1614, 404.1740, 404.1745, 416.912, 416.913, 416.993, 416.994, 416.1014, 416.1435, 416.1470, 416.1540, and 416.1545.

**Introduction**

We need complete evidentiary records to make accurate, consistent disability determinations and decisions at each level of our administrative review process. Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims. Consequently, we expect claimants and their representatives to make good faith efforts to ensure that we receive complete evidence.

**\*2** Under the Act, we cannot find that an individual is disabled "unless [he or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."[1] This statutory provision places primary responsibility for the development of evidence

on the claimant. Consistent with the claimant's statutory obligation to provide us with evidence regarding his or her disability or blindness claim, our regulations require a claimant to submit or inform us about all evidence known to him or her that relates to whether or not he or she is disabled or blind. [2] At the hearings level, a claimant generally must submit or inform us about written evidence at least 5 business days before the date of his or her scheduled hearing. [3] We adopted this 5-day requirement in December 2016 and implemented it in May 2017, to address unprecedented workload challenges. [4] As we explained in the preamble to our notice of proposed rulemaking, ""[w]e cannot afford to continue postponing hearing proceedings because the record is not complete at the time of the hearing." [5]

A representative's duty to submit evidence is derivative of the claimant's; [6] however, representatives must also follow our rules of conduct and standards of responsibility for representatives. [7] Those rules impose an affirmative duty on a representative to act with reasonable promptness to help obtain the information or evidence that the claimant must submit and forward the information or evidence to us as soon as practicable. [8] A representative also has an affirmative duty to assist a claimant in complying, as soon as practicable, with our requests for information or evidence. [9]

This Ruling explains the requirement to submit or inform us about evidence and clarifies who has the final responsibility to obtain written evidence.

**Policy Interpretation**

**1. Statutory Provisions**

In general, an individual has a statutory obligation to provide us with evidence to prove to us that he or she is disabled or blind. The Act also precludes us from finding that an individual is disabled or blind unless he or she submits such evidence to us. [10]

The Act also provides that we "shall consider all evidence available in [an] individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." [11] In addition, when we make any determination, the Act requires us to "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." [12]

**\*3**  Thus, although a claimant has the primary responsibility to submit evidence related to his or her disability or blindness claim, the Act also gives us a role in developing evidence. Our statutory responsibilities to ensure that we develop a complete 12-month medical history when we make a determination about whether an individual is under a disability, and to make every reasonable effort to obtain from a claimant's treating source all medical evidence that we need to make a determination before we evaluate medical evidence from a consultative examiner, does not, however, reduce the claimant's responsibilities in any way.

## 2. An Individual's Affirmative Duty To Provide Written Evidence

Our regulations require an individual to submit or inform us about all evidence known to him or her that relates to whether or not he or she is disabled or blind.[13] This duty is ongoing and requires an individual to disclose any additional evidence about which he or she becomes aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge (ALJ) hearing decision.[14]

Generally, individuals must submit or inform us about any written evidence no later than 5 business days prior to the date of the scheduled hearing before an ALJ.[15] The ALJ may decline to consider or obtain any evidence if disclosure takes place after this date, unless certain circumstances outlined in the regulations apply.[16]

We expect individuals to exercise their reasonable good faith judgment about what evidence "relates" to their disability claims.[17] Evidence that may relate to whether or not a claimant is blind or disabled includes objective medical evidence, medical opinion evidence, other medical evidence, and evidence from nonmedical sources.[18]

To satisfy the claimant's obligation under the regulations to "inform" us about written evidence, he or she must provide information specific enough to identify the evidence (source, location, and dates of treatment) and show that the evidence relates to the individual's medical condition, work activity, job history, medical treatment, or other issues relevant to whether or not the individual is disabled or blind. If the individual does not provide us with information specific enough to allow us to identify the written evidence and understand how it relates to whether or not the individual is disabled or blind, the individual has not informed us about evidence within the meaning of 20 CFR 404.935, 404.1512, 416.912 or 416.1435, and we will not request that evidence.

## 3. A Representative's Affirmative Duty To Assist in Developing Written Evidence

Our regulations require appointed representatives to assist claimants in complying fully with their responsibilities under the Act and our regulations. All representatives must faithfully execute their duties as agents and fiduciaries of claimants. In that regard, representatives must assist claimants in satisfying the claimants' duties regarding the submission of evidence and in complying with our requests for information or evidence as outlined in the prior section. [19]

**\*4** In addition to these responsibilities, a representative has an affirmative duty to provide competent assistance to the claimant, including acting with reasonable promptness to help obtain information or evidence the claimant must submit. [20] To fulfill his or her affirmative duties under our rules, the representative must forward this information or evidence to us and must assist the claimant in complying with our requests for information or evidence as soon as practicable. [21] In addition, under our rules of conduct, the representative is prohibited from, through his or her own actions or omissions, unreasonably delaying or causing to be delayed, without good cause, the processing of a claim at any stage of the administrative decisionmaking process. [22] Representatives are also prohibited from engaging in actions or behavior prejudicial to the fair and orderly conduct of administrative proceedings. [23] A representative's failure to comply with his or her affirmative duties (or his or her engagement in prohibited actions) could result in disciplinary action.

While our regulations state that a claimant must submit or inform us of all written evidence at least 5 business days prior to a hearing, our rules of conduct place additional requirements on representatives. As discussed above, under the rules of conduct, representatives are: (1) Required to act with reasonable promptness to help obtain information or evidence the claimant must submit; (2) required to assist the claimant in complying with our requests for information or evidence as soon as practicable; (3) prohibited from unreasonably delaying or causing a delay of the processing of a claim without good cause; and (4) prohibited from actions or behavior prejudicial to the fair and orderly conduct of administrative proceedings. Therefore, we expect representatives to submit or inform us about written evidence as soon as they obtain or become aware of it. Representatives should not wait until 5 business days before the hearing to submit or inform us about written evidence unless they have compelling reasons for the delay (e.g., it was impractical to submit the evidence earlier because it was difficult to obtain or the representative was not aware of the evidence at an earlier date). In addition, it is only acceptable for a representative to inform us about evidence without submitting it if the representative shows that, despite good faith efforts, he or she could not obtain the evidence. Simply informing us of the existence of evidence without providing it or waiting until 5 days before a hearing to inform us about or provide evidence when it was otherwise available, may cause unreasonable delay to the processing of the claim, without good cause, and may be prejudicial to the fair and orderly conduct of our administrative proceedings. As such, this behavior could be found to violate our rules of conduct and could lead to sanction proceedings against the representative.

**\*5**  Pursuant to the Act, we may, after due notice and opportunity for hearing, suspend or prohibit from further practice before the Commissioner a representative who refuses to comply with our rules and regulations or who violates any provision for which a penalty is prescribed. [24]

We will evaluate each circumstance on a case-by-case basis to determine whether to refer a possible violation of our rules to our Office of the General Counsel (OGC). For example, in accordance with the regulatory interpretation discussed above, we may refer a possible violation of rules to OGC when:

· A representative informs us about written evidence but refuses, without good cause, to make good faith efforts to obtain and timely submit the evidence;

· a representative informs us about evidence that relates to a claim instead of acting with reasonable promptness to help obtain and timely submit the evidence to us;

· the representative waits until 5 days before a hearing to provide or inform us of evidence when the evidence was known to the representative or available to provide to us at an earlier date;

· the clients of a particular representative have a pattern of informing us about written evidence instead of making good-faith efforts to obtain and timely submit the evidence; or

· any other occasion when a representative's actions with regard to the submission of evidence may violate our rules for representatives.

When we refer a possible violation to OGC, it does not change our duties with respect to the development of the evidence. [25]

## 4. Our Duty To Assist Claimants in Developing Written Evidence

Before we make a determination that an individual is not disabled, we must develop the individual's complete medical history, generally for at least 12 months preceding the month in which he or she applied for benefits. [26] We will make every reasonable effort to help individuals obtain medical evidence from their own medical sources and entities that maintain medical evidence when the individual gives us permission to request the information. [27] Every reasonable effort means that we will make an initial request for evidence from the medical source or entity that maintains the medical evidence, and, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make a follow-up request to obtain the medical evidence necessary to make a determination. [28]

We will assist with developing the record and may request existing evidence directly from a medical source or entity that maintains the evidence if:

· We were informed about the evidence (in the manner explained above) no later than 5 business days before the date of the scheduled hearing; or

· we were not informed about the evidence at least 5 business days before the date of the scheduled hearing, but one of the circumstances listed in 20 CFR 404.935(b) or 416.1535(b) applies.

**\*6** We will first ask the individual or representative to submit the evidence. However, if the individual or representative shows that he or she is unable to obtain the evidence despite good faith efforts or for reasons beyond his or her control, we may request the evidence directly from the medical source or entity that maintains the evidence.

At the Appeals Council level of review, development of evidence is more limited. The Appeals Council will not obtain or evaluate additional evidence when deciding whether to grant review unless:

· One of the circumstances listed in 20 CFR 404.970(b) or 416.1470(b) applies and the individual or his or her representative shows that the evidence is related to the period on or before the date of the hearing level decision; or

· the claim is a title XVI claim that is not based on an application for benefits (e.g., an age-18 redetermination).

[FR Doc. 2017-21252 Filed 10-3-17; 8:45 am]

BILLING CODE 4191-02-P

Social Security Administration

Department of Health and Human Services

**Footnotes**

1     Sections 223(d)(5)(A) and 1614(a)(3)(H)(i) of the Act, 42 USC 423(d)(5)(A) and 1382c(a)(3)(H)(i).

2     20 CFR 404.1512(a) and 416.912(a).

3    20 CFR 404.935(a) and 416.1435(a).

4    81 FR 90987.

5    81 FR 45079, 45080 (2016).

6    20 CFR 404.1710(a) and 416.1510(a).

7    20 CFR 404.1740 and 416.1540.

8    20 CFR 404.1740(b)(1) and 416.1540(b)(1).

9    20 CFR 404.1740(b)(2) and 416.1540(b)(2).

10    See sections 223(d)(5)(A) and 1614(a)(3)(H)(i) of the Act, 42 USC 423(d)(5)(A) and 1382c(a)(3)(H)(i); 20 CFR 404.1512(a)(1) and 416.912(a)(1).

11    Sections 223(d)(5)(B) and 1614(a)(3)(H)(i) of the Act, 42 USC 423(d)(5)(B) and 1382c(a)(3)(H)(i).

12    Id.

13    20 CFR 404.1512(a)(1) and 416.912(a)(1).

14    20 CFR 404.1512(a)(1) and 416.912(a)(1).

15    20 CFR 404.935 and 416.1435.

16    20 CFR 404.935(b) and 416.1425(b). However, for age-18 redetermination and continuing-disability review cases under title XVI of the Act, the requirement to submit or inform us about evidence no later than 5 business days before a scheduled hearing does not apply if our other rules allow the claimant to submit evidence after the date of an ALJ decision. See 20 CFR 416.1435(c) and 416.1470(b).

17    80 FR 14828, 14829 (March 20, 2015).

18    20 CFR 404.1513(a) and 416.913(a). However, evidence generally does not include confidential communications between the individual and his or her representative about providing or obtaining legal advice, and it does not include a representative's written analyses of the claim. 20 CFR 404.1513(b) and 416.913(b).

19    See 20 CFR 404.1740(b)(1), (b)(2) and 416.1540(b)(1), (b)(2).

20    See 20 CFR 404.1740(b)(3) and 416.1540(b)(3).

21    20 CFR 404.1740(b)(1), (b)(2) and 416.1540(b)(1), (b)(2).

22    20 CFR 404.1740(c)(4) and 416.1540(c)(4).

23    20 CFR 404.1740(c)(7) and 416.1540(c)(7).

24    42 USC 406(a)(1). See also 20 CFR 404.1745 and 416.1545 ("When we have evidence that a representative ... has violated the rules governing dealings with us, we may begin proceedings to suspend or disqualify that individual from acting in a representational capacity before us.")

25    See 20 CFR 404.935 and 416.1435.

26    Sections 223(d)(5)(B) and 1614(a)(3)(H)(i) of the Act, 42 USC 423(d)(5)(B) and 1382c(a)(3)(H)(i); 20 CFR 404.1512(b) and 416.912(b).

27    20 CFR 404.1512(b)(1) and 416.912(b)(1).

28    20 CFR 404.1512(b)(1)(i), 404.1593(b), 416.912(b)(1)(i), and 416.993(b).

SSR 17-4P (S.S.A.), 2017 WL 4736894

---

    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

  © 2020 Thomson Reuters. No claim to original U.S. Government Works.  

2019 WL 6840134
Only the Westlaw citation
is currently available.
United States District
Court, N.D. New York.

SHARI LEE Z., Plaintiff,
v.
Andrew SAUL, [1] Defendant.

5:19-CV-0268 (GTS)
|
Signed 12/16/2019

**Attorneys and Law Firms**

OF COUNSEL: E. KENTON FOULKE, ESQ.,
FOULKE LAW FIRM, Counsel for Plaintiff, 5
Court Street, Auburn, NY 13021.

OF COUNSEL: AMELIA STEWART, ESQ.,
Special Assistant U.S. Attorney, SOCIAL
SECURITY ADMINISTRATION, OFFICE
OF GENERAL COUNSEL–REGION I,
Counsel for Defendant, 625 JFK Building, 15
New Sudbury Street, Boston, MA 02203.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States
District Judge

**\*1** Currently before the Court, in this action
filed by Shari Lee Z. ("Plaintiff") against
the Commissioner of Social Security, Andrew
Saul ("Defendant") pursuant to 42 U.S.C. §
405(g), are (1) Plaintiff's motion for judgment
on the pleadings, and (2) Defendant's motion
for judgment on the pleadings. (Dkt. Nos. 10,
14.) For the reasons set forth below, Plaintiff's
motion for judgment on the pleadings is denied
and Defendant's motion for judgment on the
pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background
Plaintiff was born in 1968, making her
46 years old at her application filing date
and 49 years old at the date of the
ALJ's decision. Plaintiff reported having a
high school education with a history of
special education. Plaintiff alleges disability
due to fibromyalgia, headaches, borderline
personality disorder, osteopenia, osteoarthritis,
acid reflux, obsessive compulsive disorder
("OCD"), panic attacks, anxiety attacks,
depression, overactive bladder, back problems,
high blood pressure, scoliosis, and sinus
problems.

### B. Procedural History
Plaintiff applied for Supplemental Security
Income on December 15, 2015. Plaintiff's
application was initially denied on January
7, 2016, after which she timely requested a
hearing before an Administrative Law Judge
("ALJ"). Plaintiff appeared at a video hearing
before ALJ Laureen Penn on February 14,
2018. On March 12, 2018, the ALJ issued
a written decision finding Plaintiff was not
disabled under the Social Security Act. (T.
15-35.) [2] On February 1, 2019, the Appeals
Council denied Plaintiff's request for review,
making the ALJ's decision the final decision of
the Commissioner. (T. 1-3.)

**C. The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 18-35.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date. (T. 18.) Second, the ALJ found that Plaintiff's bilateral knee arthritis, fibromyalgia, osteoarthritis, degenerative disc disease, spondylosis, sacroiliitis, idiopathic scoliosis, lumbosacral radiculopathy, systemic lupus erythematosus, undifferentiated connective tissue disease, osteoporosis, degenerative joint disease, carpal tunnel syndrome, major depressive disorder, OCD, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), panic disorder without agoraphobia, and cognitive disorder are severe impairments. (*Id.*) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 20-24.) Specifically, the ALJ considered Listings 1.02, 1.04, 11.14, 12.04, 12.06, 12.11, 12.15, 14.02, and 14.06. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

**\*2** sedentary work as defined in 20 CFR 416.967(a) except she can lift and carry 10 pounds occasionally and 10 pounds frequently. She can stand and walk for three hours. She can sit for six hours. She can occasionally stoop, crouch, and kneel, and never crawl. She can occasionally

climb stairs and ramps, but not climb ladders, ropes, or scaffolds. She can frequently handle and finger bilaterally. She can perform simple, routine, repetitive [tasks] in an environment with few, if any, workplace changes. She can occasionally interact with supervisors [and] coworkers, and can have incidental interaction with the public.

(T. 24.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work. (T. 33.) Sixth, the ALJ found that Plaintiff remains able to perform a significant number of sedentary jobs in the national economy, specifically as a document preparer, a toy stuffer, and an addresser. (T. 34.) The ALJ therefore concluded that Plaintiff is not disabled.

**D. The Parties' Briefing on Their Motions**

**1. Plaintiff's Motion for Judgment on the Pleadings**

Generally, in her memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 10, at 7-19 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because (a) that finding is based on her lay opinion, her selective consideration of the evidence, and her misinterpretation of the evidence, and (b) the

ALJ erred in failing to afford controlling weight to the opinion from treating physician Martin Schaeffer, M.D., in that she failed to provide adequate reasons supported by the evidence for declining to adopt the limitations opined by Dr. Schaeffer. (*Id.* at 7-17.)

Second, Plaintiff argues that the ALJ erred in refusing to consider or accept evidence from the Brownell Center that was submitted two days before the hearing because (a) it resulted in the ALJ considering an opinion from Nurse Practitioner Melinda Myers without the benefit of her treatment records, and (b) it left the record incomplete such that the ALJ could not have rendered a sufficient decision without that evidence. (*Id.* at 17-19.)

### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant asserts two arguments. (Dkt. No. 14, at 3-18 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence because (a) the ALJ properly and fairly considered and reconciled all of the evidence in the record when making that finding, and (b) the ALJ properly considered Dr. Schaeffer's opinion and provided good reasons for declining to afford that opinion controlling weight or to accept all of the opined limitations. (*Id.* at 3-15.)

Second, Defendant argues that the ALJ was entitled to reject the late-submitted evidence from the Brownell Center because Plaintiff's counsel did not submit that evidence within the time period required by the regulations and did not offer any reason sufficient under the regulation to merit consideration of that evidence. (*Id.* at 15-18.) Defendant notes that the record does contain other treatment notes from the Brownell Center, and argues that the regulations allow for consideration of an otherwise "incomplete" record where the relevant evidence was not submitted within the time period required by law. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91

S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**\*3** "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

#### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137,

140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether,

despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord* *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### 1. Whether the ALJ's RFC Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 3-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Plaintiff has attempted to poke holes in the ALJ's decision by honing in on specific statements and arguing why she believes those statements were erroneous, including statements that there was no objective evidence to support the reported severity of Plaintiff's back pain, that the MRI of her lumbar spine showed only mild-to-moderate changes, and that Plaintiff did not make ongoing complaints to providers about her back pain. (Dkt. No. 10, at 7-11 [Pl.'s Mem. of Law].) Plaintiff's various arguments are without merit.

*4 Plaintiff first argues that "the ALJ reasoned that there was no objective evidence supporting the claimant's testimony of severe back pain." (Dkt. No. 10, at 8 [Pl.'s Mem. of Law].) However, the ALJ did, in fact, note objective evidence supporting limitations from Plaintiff's back impairment and pain, but simply found that the objective evidence did not support the *degree* of limitation asserted by Plaintiff. It is the ALJ's duty to make such determinations based on all the evidence, and the ALJ need not accept a claimant's reported subjective degree of limitation where such reports are not supported by the evidence. *See* SSR 16-3p (noting that the ALJ must consider the effect of a claimant's symptoms on her ability to perform work-related functions, including assessing whether those symptoms are consistent with the objective medical and other evidence in the record). The ALJ cited objective and other evidence of limitations and concluded that they limited Plaintiff to a range of sedentary work. It is therefore clear that the ALJ appropriately considered the objective medical evidence related to Plaintiff's back impairment. Additionally, even if Plaintiff can point to instances where she reported back pain to her providers to contradict the ALJ's finding that she did not make ongoing complaints

to those providers of the symptoms to the degree alleged, the ALJ offered multiple other reasons, including the objective evidence and her reported daily activities, for finding that Plaintiff's symptoms were not as severe as she alleged. To the extent that Plaintiff argues that the ALJ selectively reviewed the evidence to focus on only the evidence that supported her finding, the relevant legal standards do not require the ALJ to discuss all of the evidence, but rather only to show that her decision is supported by substantial evidence. *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered."); *accord Clark v. Comm'r of Soc. Sec.*, 13-CV-0256, 2016 WL 1057047, at *5-6 (N.D.N.Y. Mar. 14, 2016) (Scullin, J.); *Fiorenza v. Comm'r of Soc. Sec.*, 16-CV-1255, 2017 WL 4443815, at *5 (N.D.N.Y. Oct. 4, 2017) (Suddaby, C.J.). Lastly, Plaintiff's argument that the ALJ's characterization of an MRI as showing mild-to-moderate degenerative changes was somehow contrary to the evidence is entirely without merit and, as Defendant argues, Plaintiff has not pointed to any way in which the ALJ's failure to specifically note findings such as disc herniation or mild nerve root impingement establishes that the ALJ did not consider those findings or that the ALJ's finding should have been different on the basis of this MRI; as already discussed, the ALJ need not discuss every piece of evidence to show that it was considered.

Plaintiff also argues that the ALJ erred in failing to afford controlling weight to Dr. Schaeffer's opinion and in failing to adopt the limitations contained in that opinion. (Dkt. No. 10, at 11-17 [Pl.'s Mem. of Law].) " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 [2d Cir. 2008]). However, in situations where the treating physician's opinion is not entitled to controlling weight, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at

129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

As an initial matter, the Court rejects Plaintiff's argument that the ALJ was required to afford Dr. Schaeffer's opinion controlling weight because, as the ALJ found, it is not well-supported or consistent with the substantial evidence in the record. In affording only "some" weight to Dr. Schaeffer's opinion,[3] the ALJ stated that (a) his limitation for lifting and carrying up to five pounds was inconsistent with observations of only mild hand swelling and a minor decrease in grip strength, (b) his limitations for greatly reduced abilities to sit, stand, and walk were inconsistent with the moderate findings related to Plaintiff's knees, no ongoing findings of gait abnormality, and no observed use of an assistive device, (c) he failed to provide any rationale to support his findings related to manipulation, operation of foot controls, occasional exposure to hazards, or occasional posteral limitations (although the ALJ found that those postural limitations were supported by the overall record), and (d) his opinion was inconsistent with the conservative treatment history, the "at most moderate objective findings", and Plaintiff's own reported activities.[4] (T. 31.)

**\*5** The ALJ's decision therefore shows that she considered the relevant factors and provided good reasons supported by substantial evidence for the weight she afforded to Dr. Schaeffer's opinion. In particular, it is well-established that "[i]nconsistency with the evidence can constitute a good reason

for rejecting a treating physician's opinion." *LaFave v. Comm'r of Soc. Sec.*, 16-CV-0621, 2017 WL 4011264, at \*5 (N.D.N.Y. Sept. 11, 2017) (Suddaby, C.J.) (citing *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 [2d Cir. 2007]; *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 [N.D.N.Y. 2011]). The medical treatment evidence as a whole shows that Plaintiff typically had a normal gait, some decreased range of spinal motion, tender points associated with fibromyalgia, pain with palpation of her lumbar region, tenderness over her bilateral sacroiliac joints, in her knees and in her DIP and PIP finger joints, primarily normal reflexes and strength in her lower extremities, a positive right-sided straight-leg raising test, and some mild-to-moderate crepitus and effusion in her knees with limited range of motion in her right knee. (*See e.g.,* T. 551, 591, 611-12, 629-31, 667-68, 671-72, 676, 678-79, 684-85, 693, 704-05, 747-48, 752, 756, 761, 764, 768, 780, 784-85, 793-94, 798, 801-02, 815-16, 820-21, 828, 833, 837-38, 842-43, 848, 853, 858, 867, 869, 898-99, 935-36, 972-74, 986-88, 1001-02, 1007, 1021-23, 1032-33, 1042-45.) As the ALJ found, this evidence is inconsistent with the quite extreme limitations opined by Dr. Schaeffer. As a result, the ALJ's rejection of most of the limitations opined by Dr. Schaeffer is supported by both legally sufficient good reasons and substantial evidence. Plaintiff's various arguments on this matter are rejected.

Additionally, the ALJ's RFC finding is, as a general matter, supported by substantial evidence. Although the ALJ inadvisedly afforded "some weight" to all of the opinions in the record, it is clear from her explanations which opinions she relied on to a greater extent when formulating the RFC

and which she found to be lacking. As to the functional opinions related to Plaintiff's physical impairments from the relevant time period, the ALJ made the following findings: (1) the opinion from consultative examiner Mohammed Zaman, M.D., was generally consistent with her complaints and the findings, but additional limitations were warranted in standing and walking due to subsequent treatment for her knee impairment;[5] (2) the opinion from treating physician Dr. Schaeffer was inconsistent with the objective evidence, her conservative treatment and her own reported activities, and he failed to provide clear rationale for the opined limitations; and (3) the opinion from treating rheumatologist Digant Nanavati, M.D.[6], was inconsistent with the objective medical findings and other evidence and her conservative treatment, and he failed to prove rationale for the opined limitations. (T. 30-32.) The ALJ also discussed the objective treatment notes in detail in a way that shows that her RFC finding is supported by substantial evidence. (T. 25-30.)

The Court notes that Plaintiff did not challenge the weight afforded to any of the opinions related to her mental functioning or argue that the mental RFC was unsupported, other than to argue that the ALJ lacked sufficient evidence to make a mental determination (an argument the Court rejects, as will be discussed below in Part III.2 of this Decision and Order). As a result, the Court states only that it finds that the ALJ's findings as to Plaintiff's mental functioning are supported by substantial evidence based on her consideration of the evidence as a whole and her appropriate weighing of the relevant opinion evidence.

For all of the above reasons, the Court finds that the ALJ's RFC finding is consistent with the applicable legal standards and supported by substantial evidence.

### 2. Whether the ALJ Properly Declined to Accept the Late-Submitted Records

**\*6** After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 15-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Section 1435 of Title 20 of the Code of Federal Regulations states that "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 416.912, no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 1435(a). If a party fails to comply with this requirement to submit all written evidence at least five days before the hearing, "the administrative law judge may decline to consider or obtain the evidence unless" (1) the agency's actions mislead the party, (2) the party had a physical, mental, educational, or linguistic limitation that prevented him or her from submitting the evidence, or (3) the party experienced an unusual, unexpected, or unavoidable circumstance that prevented him or her from submitting the evidence earlier, such as serious illness, the death or serious illness of an immediate family member, accidental destruction or damage to the records, or inability to obtain those records in the relevant time despite active and diligent searching. 20 C.F.R. § 416.1435(a)-(b).

In her decision, the ALJ explained that she declined to admit the evidence from the Brownell Center because Plaintiff's representative submitted it the day prior to the hearing "indicating that these had been in his files but had been missed previously," and this reason did not meet an exception in 20 C.F.R. § 416.1435(b). (T. 15.) The ALJ noted that the representative "should reasonably have been aware of the missing records given the absence of updated records in the file and his appointment to the case more than six months prior to the hearing." (*Id.*)

At the hearing, Plaintiff's representative attempted to explain his late submission of the relevant records, noting that, when he received the records, they did not include the therapy notes from NP Myers, so he wrote another letter to the provider to request those and intended to put all of the records together to submit, but the provider never sent the therapy notes; it was not until he was reviewing the records from the Brownell Center that were already submitted that he realized the updated records had not been submitted, about which he stated, "I guess I overlooked it." (T. 44, 75-76.) The representative also stated, "I don't think I submitted the records that went up to 2015 but it made me think I did, and those would have been the complete records. But I don't think I'm the one that submitted those records up to 2015, I think that was put in by the Social Security Administration. So it was just a combination of unfortunate events." (T. 76.) In other words, Plaintiff's counsel saw records from the Brownell Center that had been submitted by the Social Security

Administration and mistakenly believed that he had submitted the updated records.

The Court finds that the ALJ's determination that Plaintiff had not shown any of the exceptions in 20 C.F.R. § 416.1435(b) is consistent with the regulations and supported by substantial evidence. The representatives explanation makes it clear that he simply forgot to submit those updated records from the Brownell Center; such a mistake by a representative is not an unusual, unexpected, or unavoidable circumstance as contemplated by the regulation. Nor does his statement that the inclusion of older records from the Brownell Center made him think he submitted the updated records indicate that the Social Security Administration's actions in uploading those older files misled Plaintiff's counsel into believing the newer records had been submitted; a cursory glance at those older records would have revealed to him that they did not extend past 2015.

**\*7** In making her argument, Plaintiff does not address whether the untimely submission meets the requirements of 20 C.F.R. § 416.1435(a) and (b), but rather focuses on whether failure to admit these records made the administrative record incomplete. (Dkt. No. 10, at 17-19 [Pl.'s Mem. of Law].) However, the fact that the record might be incomplete without the late-submitted records from the Brownell Center does not require remand because, as this Court has noted previously, although there is a general duty on the ALJ to ensure a complete record before rendering a decision, the Social Security Administration specifically balanced that duty with the goal of the five-day rule, and "[t]o say that the ALJ was required to admit and

consider this evidence despite the fact that it was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with." *See Arthur L. v. Berryhill*, 18-CV-0304, 2019 WL 4395421, at *3-4 (N.D.N.Y. June 6, 2019) (Stewart, M.J.) (rejecting the same argument) report and recommendation adopted by 2019 WL 3213229 (N.D.N.Y. July 17, 2019) (Scullin, J.).

The circumstances of this case do not suggest that any different outcome is warranted. Plaintiff has been represented by her current counsel since June 23, 2017, which was approximately eight months before her hearing occurred, and thus counsel had plenty of time to obtain and submit mental health treatment records from the Brownell Center for the period after October 2015. (T. 236-38.) Additionally, the evidence in the record (excluding the relevant Brownell Center records) provides sufficient evidence from which the ALJ could assess Plaintiff's mental functioning; in addition to the opinion from NP Myers, the record contains a consultative examination and reports and examinations related to Plaintiff's mental health symptoms (particularly her anxiety) from her family physician and other providers. The Court therefore cannot say that the record is so insufficient that it rendered the ALJ incapable of making a determination without the ability to consider the more recent Brownell Center records. As a result, in the absence of any sufficient reason for failing to timely submit those records, the Court finds that the ALJ was within her discretion under the regulations to refuse to consider the late-submitted evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

**All Citations**

Slip Copy, 2019 WL 6840134

## Footnotes

1    Plaintiff initially filed this action against Nancy Berryhill in her capacity as the Acting Commissioner of the Social Security Administration at the time Plaintiff filed her Complaint. (Dkt. No. 1 [Pl.'s Compl.].) However, Andrew Saul became the Commissioner of Social Security in June 2019. As a result, the Court finds that Commissioner Saul is automatically substituted for former Acting Commissioner Berryhill in this litigation. *See* Fed. R. Civ. P. 25(d) (stating that when a party in his or her official capacity ceases to hold the relevant office while an action is pending,

"[t]he officer's successor is automatically substituted as a party"). The Clerk of Court is directed to update the caption to reflect this substitution.

2    The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

3    Dr. Schaeffer opined that Plaintiff could occasionally lift and carry up to five pounds, sit two hours total, stand or walk one hour total but did not require a cane to ambulate, occasionally reach, handle, finger, feel, push and pull bilaterally, occasionally operate foot controls bilaterally, occasionally perform postural activities, and occasionally be exposed to unprotected heights and moving mechanical parts, and operate a motor vehicle. (T. 646-51, 875-80.)

4    The Court notes that the ALJ only explicitly discussed and weighed Dr. Schaeffer's functional opinion from October 2016, despite the fact the record also contains a functional opinion from July 2017. (T. 31, 875-80.) However, the only substantial difference between these two opinions is the addition of a limitation to moderate noise in the July 2017 opinion; the rest of the limitations are completely identical. (*Compare* T. 646-51 *with* T. 875-80.) Given that Plaintiff has not alleged any problems dealing with noise levels, and that the ALJ appears to have rejected an identical limitation from a different source, the Court finds it appropriate to assume that the ALJ implicitly rejected the July 2017 opinion for all of the same reasons it rejected the October 2016 opinion, and finds that the ALJ's failure to explicitly discuss the July 2017 opinion is harmless error. *See Fiducia v. Comm'r of Soc. Sec.*, 16-CV-1317, 2017 WL 4513405, at *4 (N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) (collecting cases finding that failure to consider or weigh an opinion is harmless error where consideration of that opinion would not have changed the outcome). The Court also notes that Plaintiff did not argue that the ALJ erred in failing to explicitly discuss the July 2017 opinion, or make any specific argument as to a limitation for dealing with noise levels or how such limitation would change the outcome of the ALJ's findings.

5    On December 3, 2015, Dr. Zaman opined that Plaintiff had a mild limitation in walking, standing, and handling objects, and a moderate limitation in climbing, bending, lifting, carrying, kneeling, reaching, pulling, and pushing. (T. 585.)

6    On August 14, 2017, Dr. Nanavati opined that Plaintiff could never lift or carry, could sit less 10-to-15 minutes total, stand less than 15 minutes total, walk less than 10 minutes total, needed to use a walker, could occasionally handle, finger and feel, but never reach, push or pull, never operate foot controls, occasionally climb stairs, never engage in other posturals, never be exposed to environmental conditions, and be exposed to only moderate noise. (T. 882-87.)

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.